Curran, Dennis J., J.
PROCEDURAL BACKGROUND
Mr. and Mrs. Gilbert and Grassia Gerges, formerly tenants at 16 Mammola Way, Medford, Massachusetts have sued their former landlord, Ramona Eskanian, for duress, undue influence and misrepresentation in forcing them to sign a Settlement Agreement and Release that arose out of their eviction. Mr. and Mrs. Gerges seek a declaratory judgment that that Agreement be rendered void as unconscionable.
The genesis for this matter was a judgment in a summary process action issued by the Somerville District Court for $43,863.60 on July 29, 2011. An execution issued on August 23,2011; and the landlord speedily employed a constable who promptly posted a “48 How Notice of Vacate Property” on August 26, 2011; and the eviction date and time was set for August 31, 2011 at 10:00 a.m. This case concerns the eviction event.
The plaintiffs never sought a jury trial, and the defendant waived such right in open court. Thus, this matter was tried on August 22, 2013. The plaintiffs, who had formerly been represented by counsel, proceeded pro se.
*353 FINDINGS OF FACT
In 2010, Mr. and Mrs. Gerges were interested in buying a home for their family (which included their then six-year-old boy). A relative of Grassia’s, Ramona Eskanian, with her husband Tero (Tony) Eskanian, owned a house at 16 Mammola Way, Medford, which the Gergeses were interested in buying. To this end, they paid $2,000 to Tero Eskanian on January 6,2010 and $10,000 to Jacqueline Eskanian on April 29, 2010, months before they ever occupied the property. In this case, there was no evidence offered that memorialized the purchase agreement, leading the court to surmise that the transaction changed from one of sale to that of renting the premises. Thus, the evidence appears to support the position that the Gergeses decided to rent the property beginning in June 2010 for one year at $1,000 per month. At this point, they had pre-paid the entire year’s rent by a first check which preceded the occupancy date by six months, and a second check that paid the latter ten months of occupancy was provided well over a month before the tenancy ever began.
At the conclusion of the rental period, the Es-kanians wanted the Gergeses out, filed a summary process action in the Somerville Division of the District Court Department, and obtained a trial date on July 27, 2011. Regrettably, Mr. Gerges did not appear for the trial. Instead, that morning, he reported to the Lynn Community Health Center where he reported that he suspected he was having a heart attack. A note from a Physician’s Assistant confirmed his visit, but the alarm of a heart attack proved not so. Thus, when the case was called in the district court, Mr. Gerges did not appear and was defaulted. For reasons that remain unclear, neither Mr. Gerges nor his counsel ever sought to vacate the default judgment or file an appeal. Thus, judgment entered for Ramona Eskanian in the quizzical amount of $42,500 for 13 months occupancy, 12 months of which Mr. and Mrs. Gerges presently argue had been paid well in advance.
The constable posted the usual Notice to Vacate on August 26th, providing the Gerges two days notice to pack and leave. On the appointed date and hour, Le., 10:00 a.m., two constables, each armed, the lead with a German Sig Sauer P 229, which handles .357, .22LR, 9 mm or .40 S&W cartridges in a 13- or 16-round magazine, holstered in a Griplock Release. The constable was backed up by his confederate, similarly armed, with a Glock semi-automatic pistol. A team of movers also swooped down onto the site in case the Gerges were unready to move.
In fact, Mr. and Mrs. Gerges had rented a U-Haul, into which they had attempted to pack their belongings. They tried to do so without the assistance of family or friends, and as a result, were way behind schedule. Instead, the movers descended on the home, and immediately began moving eveiything out of the house into a waiting truck commissioned by the landlords.
At this point, the Gerges, humiliated by the public spectacle which had attracted neighbors and other spectators, were emotionally overcome. The constable, standing on the law, asserted his clients’ legal rights and insisted on promptly evicting the family. As their then seven-year-old boy watched, his mother broke down in humiliation. The husband tried to bargain with the constable—first for additional time to pack, then for more time to live in the house, all initially to no avail. Desperate, he offered up his wife’s car (to the initial consternation of his wife) as security for a new agreement to continue to live at the premises.
The constable then worked out a deal, generated on a computer at the ready in the cab of his truck for such stratagems, whereby the Gergeses surrendered the title to their car, and then demanded $2,000 in cash from the Gerges family, which they paid.
The movers then searched the little boy’s belongings for additional cash they thought the Gergeses had secreted among his toys and other items; they found nothing. Then, they bee-lined for the freezer where they suspected the Gergeses had hidden a wad of cash; they found nothing—except for frozen food.
At this point, the Gergeses, without legal recourse, signed a Settlement Agreement and Release memorializing their surrender of Mrs. Gerges’s car, and agreed to a new rental figure of $4,156.60 in monthly payments for six months, followed by an increased rent of $4,655.60 for the next six months.[1] The Agreement specifically acknowledges that the Gergeses had consulted with counsel before signing the Agreement, which Mr. Gerges had indeed done by cell phone at the site. His counsel cautioned him not to sign any document without him first seeing it; Mr. Gerges failed to heed this advice and signed the document anyway. Mrs. Gerges signed the Agreement as well. In the Agreement, both Mr. and Mrs. Gerges acknowledged that they had the benefit of a translator, Lurans F. Kambo, who interpreted all the terms of the Agreement into the parties’ native language. Mr. Gerges speaks English well; Mrs. Gerges, a little less so, but ably, nonetheless. This arrangement was presumably made in an exercise of caution.
The Settlement Agreement was executed as a sealed instrument.
The present lawsuit arises because the Gergeses claim that both defense counsel and the constable threatened them, and their little boy, with jail if they did not sign the proposed Agreement. Indeed, they proffered affidavits earlier in the case that the defense attorney had specifically so threatened them. At trial, however, both plaintiffs recanted this portion of their affidavits, and stated instead, that defense counsel never made any such statement of the kind, and *354 indeed, remained at all times, a significant distance away from the entire stand-off.
We then turn to the conduct of the constable, who is not a named party in this lawsuit, rather, only the landlord Ramona Eskanian is. We assume that the plaintiffs are charging Mrs. Eskanian with duress, undue influence and misrepresentation, but they offered no evidence at trial that Mrs. Eskanian was present, in sight at any of these critical events, or directed the constable’s specific conduct. Moreover, they were unable to elicit any testimony from the constable that he had had any contact with Mrs. Eskanian during this unfortunate event; rather, the credible evidence amply demonstrates that the constable in question was acting on his own.
This is a sad case in many respects. The Gergeses are humble, decent and respectful people who fell behind on their monthly rent. The constable, unable to anticipate what surprises (threatening or otherwise) might unfold from a clearly emotionally charged event, prepared himself for the worst.
But once upon the scene and able to make a strategic assessment of the situation, the constable (and his posse) may had handled matters with more tact and less heavy-handedness to avoid the eventual disaster and this resultant litigation.
I do not find that the constables threatened to jail the Gerges family if they did not sign the Agreement; I do find that they threatened to arrest Mrs. Gerges because she was raising a ruckus. Faced with two armed, beefy constables, and backed by a squad of movers, perhaps this emotionally-laden event could have been handled better. It is disturbing that after this debacle and perhaps mutual resentment, Mrs. Gerges discovered that, in moving, a 14 carat white gold ring (with three diamonds) and a 5/8 diamond 14 carat white gold ring, valued at $8,000, were missing. She promptly reported this to the Medford Police Department.
The event was humiliating, shaming, and handled less than tactfully. There is little question that the landlord was within her rights; there is also little doubt that the constable (who repeatedly proclaimed on the witness stand that he was also a reserve police officer in the Cify of Somerville) might have handled matters differently. It is, of course, easy for this Court to second-guess the actions of those on the scene. But evictions occur often; and the perceived intimidation of a wife in the presence of her little boy is hardly the stuff for which good law enforcement stands.
There was no duress; there was no undue influence; and there was no misrepresentation. Mr. and Mrs. Gerges freely signed the Settlement Agreement and Release; they did so with the benefit of counsel, but declined to follow his advice; an interpreter (though probably unnecessary) explained the terms of Agreement to Mrs. Gerges in an abundance of caution. In no way was defense counsel involved in any of the plaintiffs allegations.
ORDER
For these reasons, judgment shall enter forthwith for the defendant, without costs.

As it turned out, the Gerges moved out the week after the attempted eviction anyway.